UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  9:15-CV-80484-ROSENBERG/BRANNON

NEXTERA ENERGY, INC., et al.,

   Plaintiffs,

v.

UNITED STATES OF AMERICA,

   Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Plaintiffs', Nextera Energy, Inc., et al., Motion for Partial Summary Judgment [DE 56] and Defendant United States of America's Motion for Summary Judgment [DE 57].  Both motions have been fully briefed.  For the reasons set forth below, Defendant's Motion for Summary Judgment is granted and Plaintiffs' Motion for Partial Summary Judgment is denied.

### I.     BACKGROUND AND INTRODUCTION

The core facts of this case are not in dispute.  Nextera Energy, Inc. is a business entity that owns Florida power companies.  Those Florida power companies operate nuclear power plants.  Nuclear power plants utilize fuel in the form of rods of enriched uranium.  DE 56-2 at 5.  Those rods are inserted into a nuclear reactor core and, upon insertion, a nuclear fission reaction occurs.  *Id.*  That nuclear reaction produces heat, which produces steam, which rotates a turbine, which creates electricity.  *Id.*  When the fuel reaches the end of its useful life, the fuel is highly radioactive

and must be disposed of carefully.  This suit is about the tax treatment of the costs to dispose of spent nuclear fuel—nuclear waste.[1]

The disposal of radioactive nuclear waste is costly and difficult.  To address this difficulty, Congress passed the Nuclear Waste Policy Act in 1983 ("Act").  That Act assigned the responsibility for nuclear waste disposal to the Department of Energy ("DOE").  The DOE was entrusted with the responsibility of taking possession of nuclear waste, transporting it to a carefully prepared location, and storing the waste.  The Act also imposed fees on nuclear power plant operators which those operators had to pay to the DOE.  This case is about those fees.

Plaintiff Nextera[2] filed the instant suit on April 14, 2015, seeking a tax refund in connection with payments it made to the DOE over many years.  Nextera's payments to the DOE are the subject of each of Nextera's fourteen counts.  Each count corresponds to a different tax year and each count is premised on the same section of the Internal Revenue Code: 26 U.S.C. § 172(f).  After substantial discovery, the parties filed cross motions for summary judgment on July 15, 2016.  Both motions for summary judgment focus on the same legal issue—the proper tax treatment of fees paid by Nextera to the DOE for nuclear waste disposal under 26 U.S.C. § 172(f).  Because each of Nextera's counts is premised on Section 172(f), the motions before the Court—and the Court's interpretation of Section 172(f)—are dispositive of this case.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1] Nuclear waste includes not only nuclear fuel rods, but also equipment that is attached to nuclear fuel rods.  *See* DE 56-2 at 5-6.
[2] The Court refers to the collective Plaintiffs (Florida Power and Light Company is the other named Plaintiff) in this case as Nextera.

56(a).  The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party."  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48).  A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  The Court does not weigh conflicting evidence.  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).  Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment.  *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party.  *See Shiver*, 549 F.3d at 1343.

3

### III. ANALYSIS

Nextera's suit is premised upon one provision of the Internal Revenue Code: 26 U.S.C. § 172. Section 172 covers the tax treatment of net operating losses. A net operating loss, under the Code, is defined as an excess of deductions for any given tax year. In other words, a net operating loss exists when a taxpayer has more available deductions than the taxpayer is permitted to take. 26 U.S.C. § 172(c). When a taxpayer has excess deductions (net operating losses), the taxpayer may "carryover" the deductions to a future tax year or "carryback" the deductions to a prior year, provided that the carryback is limited to the two prior tax years. 26 U.S.C. § 172(b)(1)(A). Under special circumstances, however, a taxpayer may carryback losses further into the past than two years. For example, a taxpayer may carryback a "specified liability loss" to each of the ten tax years preceding the year of the loss. 26 U.S.C. § 172(b)(1)(C). A "specified liability loss" is defined in 26 U.S.C. § 172(f) and it is this provision that is at the center of the matter before the Court.

A specified liability loss includes the sum of any "amount allocable as a deduction . . . which is in satisfaction of a liability under Federal or State Law requiring . . . the decommissioning of a nuclear power plant (or any unit thereof)." 26 U.S.C. § 172(f)(1)(B). Section 172(f) does not define "the decommissioning of a nuclear power plant (or any unit thereof)" and the parties disagree as to the meaning of this term. Nextera argues that the fees it pays to the DOE for the DOE's disposal of nuclear waste qualify as decommissioning expenses under Section 172(f) and, because it is required to pay those fees pursuant to the Nuclear Waste Policy Act, its payment of fees to the DOE is required by federal law. Thus, Nextera argues that its payments to the DOE qualify for Section 172(f) carryback treatment.

In response, Defendant argues that Nextera's payments to the DOE are not equivalent to decommissioning costs and, as a result, Nextera is not entitled to Section 172(f) carryback treatment. The Court therefore considers: (A) the meaning of "decommissioning costs" under Section 172(f); (B) whether Nextera's payments to the DOE qualify as decommissioning expenses mandated by federal law; and (C) other arguments raised by the parties in the motions before the Court. The relevant portions of Section 172(f) are set forth below:

> **(f) Rules relating to specified liability loss.**--For purposes of this section--
> **(1) In general.**--The term "specified liability loss" means the sum of the following amounts to the extent taken into account in computing the net operating loss for the taxable year:
>> **(A)** Any amount allowable as a deduction under section 162 or 165 which is attributable to--
>>> **(i)** product liability, or
>>> **(ii)** expenses incurred in the investigation or settlement of, or opposition to, claims against the taxpayer on account of product liability.
>>
>> **(B)**
>>> **(i)** Any amount allowable as a deduction under this chapter (other than section 468(a)(1) or 468A(a)) which is in satisfaction of a liability under a Federal or State law requiring--
>>>> **(I)** the reclamation of land,
>>>> **(II)** the decommissioning of a nuclear power plant (or any unit thereof),
>>>> **(III)** the dismantlement of a drilling platform,
>>>> **(IV)** the remediation of environmental contamination, or
>>>> **(V)** a payment under any workers compensation act (within the meaning of section 461(h)(2)(C)(i)).
>>>
>>> **(ii)** A liability shall be taken into account under this subparagraph only if--

5

>**(I)** the act (or failure to act) giving rise to such liability occurs at least 3 years before the beginning of the taxable year, and
>
>**(II)** the taxpayer used an accrual method of accounting throughout the period or periods during which such act (or failure to act) occurred.

### A. The Meaning of Decommissioning Costs under Section 172(f)

Both Nextera and Defendant argue that the plain meaning of Section 172(f) supports their respective positions, citing solely to dictionary definitions. The Court addresses this matter first, below. Second, the Court addresses the single regulation relevant to nuclear plant decommissioning costs, which again the parties argue supports their respective interpretations of Section 172(f). Finally, the Court addresses Nextera's citation to private letter rulings from the Internal Revenue Service in support of its interpretation of Section 172(f).

#### 1. The Ordinary Meaning of Section 172(f)

Section 172(f) permits a taxpayer to take a carryback deduction for "the decommissioning of a nuclear power plant (or any unit thereof)." Nextera argues that it should be allowed a carryback deduction under Section 172(f) for liabilities incurred in connection with the disposal of spent nuclear fuel rods. Nextera argues nuclear rods are decommissioned, just as a nuclear power plant or a nuclear reactor is decommissioned. Defendant argues that the fuel rods are not decommissioned—they are disposed of as waste.

Section 172(f) does not define "decommissioning." As a result, Nextera argues that the plain, ordinary meaning of decommissioning includes the disposal of spent nuclear fuel rods. Nextera supports its argument with a single citation to a dictionary definition. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002-03 (2012) (noting that when a term is not defined in

6

a statute, the term must be given its ordinary meaning, and examining dictionaries to determine ordinary meaning); *see also Major Paint Co. v. United States*, 334 F.3d 1042, 1045 (Fed. Cir. 2003) (noting the lack of legislative history or treasury regulations to aid courts in interpreting Section 172(f)).³ Nextera cites to Webster's Ninth New Collegiate Dictionary which defines decommissioning as "to remove . . . from service." The full definition, not supplied by Nextera, is that a decommissioning means "to remove (as a ship) from service."

Defendant responds to Nextera's argument by citing to Webster's Third New International Dictionary which also defines decommissioning as "to remove (as a ship) from service." The parties rely upon no other authority for their respective arguments on the plain, ordinary meaning of decommissioning in Section 172(f). The Court's own research includes the definition of the term by Webster's New World College Dictionary, Third Edition ("to revoke the commission of . . . to take (a vessel) out of service") and The Oxford English Dictionary ("[T]o take (a ship, aeroplane, etc.) out of service; to close down (esp. a nuclear reactor)."). For the three reasons set forth below, the Court concludes that Defendant has the better argument.

First, the dictionary definitions above make clear that the word decommissioning is used in the context of ships, airplanes, and nuclear reactors. A ship, an airplane, and a nuclear reactor are three examples of objects that provide a useful service for a very long period of time, provided they are maintained, and all three are *formally commissioned*. By contrast, it is common knowledge that fuel does not last for a very long time, that fuel is depleted when it is used, and that fuel is not

---

3 Notwithstanding the minimal amount of relevant legislative history pertaining to Section 172(f), there is some support in the legislative history for the proposition that the decommissioning of a nuclear power plant was inserted into Section 172(f) on the assumption that decommissioning would occur at the end of a plant's useful life. H.R. Rep. No. 98-861 at 877 ("[U]tilities that operate nuclear power plants are obligated to decommission the plants at the end of their useful lives.").

7

(according to its ordinary meaning) formally commissioned.[4]  Stated another way, for fuel to be *de*commissioned, it would first have to *be commissioned*.  While a naval vessel may be commissioned and decommissioned, the removal of waste from a naval vessel does not amount to decommissioning of that waste.  Similarly, while a nuclear power plant or a nuclear reactor may be commissioned and decommissioned, the removal of waste from the power plant does not amount to decommissioning of that waste.  Furthermore, Nextera's argument, taken to its logical conclusion, would mean that any piece of equipment in a nuclear power plant that is disposed of could be considered "decommissioned."  Thus, a battery placed into a device in the plant would be "commissioned" into service and then, once the charge was spent, that battery would be "decommissioned."  Nextera's interpretation is therefore unreasonable as overbroad.

Second, the relevant phrase in Section 172(f) is that a deduction may be taken for "the decommissioning of a nuclear power plant (or unit thereof)."  Nuclear fuel rods are not synonymous with a nuclear power plant.  Therefore, to the extent Nextera relies upon the contention that a "unit thereof" may include nuclear fuel, the Court does not agree.  Section 172(f) does not permit a deduction for the decommissioning of a unit of a nuclear *reactor*—it permits a deduction for the decommissioning of a unit of a nuclear power *plant*.  A plant may contain multiple nuclear reactors.[5]  The Oxford English Dictionary defines "unit" as "an individual person, thing, or group regarded as single and complete; each of the (smallest) separate individuals or groups in which a complex whole may be analyzed."  Thus, the ordinary meaning of a unit of a nuclear power plant does not encompass fuel, just as fuel would not qualify as a unit of a fleet of ships.  Instead, a far more reasonable interpretation of the phrase "a unit thereof" may be that a

---

4 Nuclear fuel does last longer than other types of fuel—approximately four years.  *See* DE 56-2 at 5.
5 For example, two of the power plants in this case have two reactors each.  *See* DE 56-2 at 4.

8

*nuclear reactor* is a unit of a nuclear power plant.  Such an interpretation would be supported by the definition of decommissioning in the Oxford English Dictionary: "[T]o take (a ship, aeroplane, etc.) out of service; to close down (esp. a nuclear reactor)."  This interpretation would also be supported by the definition of "unit" in the Oxford English Dictionary, because a nuclear reactor can qualify as: "an individual . . . thing . . . regarded as single and complete; each of the (smallest) separate [things] in which a complex whole may be analyzed."

Third and finally, the other situations in Section 172(f) that qualify for special carryback treatment tend to be "particularly 'large and sporadic.'"  *United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 825 (2001).  Section 172(f) carryback treatment is applied, for example, to the dismantling of an oil platform, the reclamation of land, the remediation of environmental contamination, and the decommissioning of nuclear power plants.  26 U.S.C. § 172(f)(1)(B)(i).  Juxtaposed to these types of unusual and large expenses, Nextera seeks to carryback fees that it makes regularly, quarterly, to the DOE.  Thus, the Court finds Nextera's interpretation of decommissioning unpersuasive in light of the provisions of Section 172(f) as a whole.

In conclusion, while a nuclear reactor may well qualify as a unit of a nuclear power plant that is commissioned and decommissioned, the Court concludes that the ordinary meaning of "decommissioning . . . a unit of a nuclear power plant" does not include the fuel that is placed into a nuclear reactor and later disposed of as waste.

    2.  <u>The Interpretation of Section 172(f) in Light of Treasury Regulations</u>

The parties' respective arguments are not limited to the ordinary meaning of the term "decommissioning."  Nextera cites to one treasury regulation, Regulation 1.468A-1, for the proposition that the costs of spent nuclear fuel disposal qualify as decommissioning costs under

9

Section 172(f). As a threshold matter, the Court is unconvinced that Regulation 1.468A-1 applies to Section 172(f) because the scope of the definitions in the Regulation is expressly limited to the Regulation itself. ("The following terms are defined for the purposes of section 468A . . . ."). In order to fully analyze Nextera's arguments, however, the Court considers the content of the Regulation to determine whether it sheds light on the definition of deductible decommissioning costs. The relevant portion of the Regulation reads as follows:

> The term nuclear decommissioning costs or decommissioning costs includes all otherwise deductible expenses to be incurred in connection with the entombment, decontamination, dismantlement, <u>removal and disposal of the structures, systems and components</u> of a nuclear power plant, whether that nuclear power plant will continue to produce electric energy or has permanently ceased to produce electric energy. Such term includes all otherwise deductible expenses to be incurred in connection with the preparation for decommissioning, such as engineering and other planning expenses, and all otherwise deductible expenses to be incurred with respect to the plant after the actual decommissioning occurs, such as physical security and radiation monitoring expenses. <u>Such term also includes costs incurred in connection with the</u> construction, operation, and <u>ultimate decommissioning</u> of a facility used solely to store, <u>pending acceptance by the government for permanent storage or disposal</u>, <u>spent nuclear fuel generated by the nuclear power plant or plants located on the same site as the storage facility</u>. Such term does not include otherwise deductible expenses to be incurred in connection with the disposal of spent nuclear fuel under the Nuclear Waste Policy Act of 1982 (Pub. L. 97-425). An expense is otherwise deductible for purposes of this paragraph (b)(6) if it would be deductible under chapter 1 of the Internal Revenue Code without regard to section 280B.

(emphasis added). Nextera stresses that (i) Regulation 1.468A-1 defines nuclear decommissioning costs as including costs that are incurred to temporarily remove and store nuclear fuel rods prior to the DOE's acquisition of those rods and (ii) the Regulation clearly permits for the deductibility of expenses whether the plant remains in operation or not and, as a result, the term "decommissioning" can include costs incurred prior to plant closure—such as fuel disposal. Nextera therefore poses the question: "If temporary, interim nuclear waste storage costs may be

10

considered nuclear decommissioning costs, why can't the cost of permanent nuclear waste disposal be considered decommissioning costs as well?"

Defendant responds to this question by pointing out that the Regulation clearly says that permanent waste disposal costs are not decommissioning costs by the express language of the second-to-last sentence in the Regulation: "Such term does not include otherwise deductible expenses to be incurred in connection with the disposal of spent nuclear fuel under the Nuclear Waste Policy Act of 1982." While Nextera concedes that fees paid to the DOE for the permanent disposal of waste are not decommissioning costs under the Regulation, Nextera argues that this exclusion should only be read as to Regulation 1.468A-1. Nextera's position, then, is that while the earlier portions of the Regulation may be used to define decommissioning for the purposes of Section 172(f) (even though the Regulation defines terms only for Regulation 1.468A-1), the latter portion of the Regulation—which excludes permanent waste disposal costs—should *not* be used to define decommissioning for Section 172(f). Nextera cannot have it both ways. Either the Regulation is useful for interpreting Section 172(f) or it is not.

The inherent conflict in Nextera's position is recognized by Nextera and, as a result, Nextera offers a strained rationale as to why the earlier portions of Regulation 1.468A-1 should apply broadly—to Nextera's benefit—but the latter portions of Regulation 1.468A-1 should apply narrowly—and therefore not limit Nextera's claims. Nextera's argument is based upon the purpose of the Regulation and it is this topic which forms the basis for another of Defendant's grounds in opposition to Nextera's position. With respect to purpose, the parties' dispute focuses on the underlying reason for excluding permanent nuclear waste disposal as a decommissioning cost but allowing temporary or interim waste storage as decommissioning costs prior to transfer of

the waste to the DOE.  Nextera argues that there is no logical reason for treating these two situations differently.  Defendant argues there is.

Defendant argues the reason for treating the costs differently is because of the statutory separation of responsibility for nuclear waste disposal.  Before spent fuel is transferred to the DOE's control, the costs and responsibility for storing the waste falls to the nuclear power companies—Nextera.  Conversely, once the fuel is transferred to the DOE, the responsibility for the disposal of the fuel and the inherent accompanying costs are borne by the DOE.  42 U.S.C. § 10131(a)(4).  Once the fuel is transferred, Nextera's obligation is not to permanently dispose of the fuel, but to pay fees to the DOE.  *Id.*  Defendant has offered a cogent, persuasive reason, supported by authority, why the tax treatment for temporary waste storage and permanent waste storage are treated differently under the Code.  Nextera's argument on this point, which focuses on the underlying purpose of Regulation 1.468A-1, does not meet the burden placed on Nextera.  A deduction is a matter of "legislative grace" and Nextera bears the burden of proving an entitlement to a deduction.  *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 94 (1992).  The plain text of Regulation 1.468A-1 does not apply to Section 172(f) and, even if the Regulation applies, the terms of the Regulation refute Nextera's position.  Deductions "are strictly construed" and allowed only when there is a clear provision in support of the deduction.  *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).  Nextera has not shown that there is a "clear provision" in the Regulation that supports its position.

### 3.  Nextera's Citation to Private Letter Rulings

Nextera cites to private letter rulings from the Internal Revenue Service in support of its interpretation of Section 172(f).  A private letter ruling may not be cited as precedent, Treas. Reg.

12

301.6110-7(b), and, as a result, this Court has not considered any private letter ruling. *See also* 27 U.S.C. § 6110(k)(3) ("[A] written determination may not be used or cited as precedent."). Although Nextera cites to a narrow exception in which a court may consider a private letter ruling, *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 261 n.17 (1981), cases such as *Rowan* stand for the limited proposition that a private letter ruling may be recognized as evidence of an administrative practice. For example, in *Rowan*, the Court recognized that private letter rulings indicated that the IRS had not been "dormant" in a particular area of the law. Conversely, here, Nextera does not proffer the private letter rulings as evidence of administrative practice, but rather as substantive precedent which this Court should consider in interpreting an undefined term in Section 172(f). Thus, Nextera's citation to private letter rulings in this case is improper.

In conclusion, the Court again notes the heavy burden placed on Nextera. The Court concludes that Nextera is not entitled to a deduction under Section 172(f) for three reasons. First, to the extent this Court must interpret the ordinary meaning of "decommissioning" a "unit" of a nuclear power plant, the Court concludes that Nextera has not met its burden to establish that the ordinary meaning of those terms encompasses the permanent disposal of spent nuclear fuel. Second, to the extent this Court may interpret Section 172(f) in light of Regulation 1.468A-1—which by its own terms does not apply to Section 172(f)—the terms of the Regulation directly refute Nextera's position. Regulation 1.468A-1 expressly excludes from the definition of nuclear decommissioning costs the expenses a plant accrues in connection with permanent fuel disposal. As a result, Nextera has not met its burden to establish that permanent nuclear waste disposal costs as defined under Regulation 1.468A-1 entitle it to a deduction under Section 172(f). Third and finally, to the extent Nextera argues there is no logical reason for the tax code to treat

temporary storage and permanent disposal differently, the Court disagrees. For all of the foregoing reasons, Defendant is entitled to summary judgment as to each of Nextera's claims.

## B. Nextera's Duties Under Federal Law

Defendant argues that it is entitled to summary judgment on another ground with respect to Section 172(f). For decommissioning costs to apply under that section, Nextera's costs must have been incurred "in satisfaction of a liability under a Federal or State law." Defendant argues that the costs at issue here are required under a law that imposes an obligation on Nextera to pay fees—not a law that imposes an obligation on Nextera to decommission units of a nuclear power plant. In other words, Defendant argues that even assuming *arguendo* that the permanent disposal of nuclear waste equates to decommissioning, the act of decommissioning is mandated by law only as to the DOE. By contrast, Defendant argues, Nextera is responsible for the payment of fees to the DOE, not for the disposal of nuclear waste. Nextera's response is to argue that its payment of fees to the DOE is *for* the DOE's disposal costs, pursuant to statute, and therefore Nextera's fees to the DOE should qualify as decommissioning costs paid in compliance with federal law.

Nextera's obligation to pay fees to the DOE originates under the Nuclear Waste Policy Act. The Act states that "while the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and such spent nuclear fuel . . . the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel." 42 U.S.C. § 10131(a)(4). The purpose of the Act was "to establish a Nuclear Waste Fund, composed of payments made by the generators and owners of such waste and spent fuel, that will ensure that the costs of carrying out activities relating to the disposal of such waste and spent fuel will be borne by the persons responsible for generating such waste and spent fuel." 42 U.S.C. §

14

10131(b)(4). The costs that plant operators must pay to the DOE are based upon the amount of electricity that was generated in the preceding three months. *See* 10 C.F.R. § 961.11; DE 58, Exhibits 1-6. Thus, federal law delineates two separate responsibilities: the DOE must dispose of nuclear waste and plant owners must pay fees to the DOE. Plant owners' fees are not directly tied to the demands and operational costs of the DOE, but instead are tied to the amount of energy that each individual plant produces. *Id.* Thus, the only act that federal law compels Nextera to undertake is that of the payment of fees for the production of energy—not the decommissioning of nuclear waste. With respect to Nextera's argument that the nuclear waste disposal costs of the DOE are essentially passed on to Nextera by statute, the Nuclear Waste Policy Act does clearly state that the costs for disposal should be the responsibility of plant owners. On this point, however, case law is instructive.

In *Major Paint Company v. United States*, 334 F.3d 1042 (Fed. Cir. 2003), a taxpayer argued that it was entitled to a deduction under Section 172(f) for costs undertaken in satisfaction of federal law by citing to the bankruptcy code. In *Major*, the taxpayer filed for bankruptcy and, in the course of bankruptcy proceedings, the taxpayer employed various professionals. *Id.* at 1044. The taxpayer argued that its costs for the hiring of those professionals were incurred because of requirements imposed by the bankruptcy code and, as a result, those costs were required by federal law. *See id.* The *Major* court, after surveying case law on the topic, concluded that two principles had arisen from case law. *Id.* at 1046. First, that "'arising out of federal law' means more than just that the liability was incurred with respect to an obligation under a federal law" and second that "the nature and amount of the liability must be traced to a specific law and cannot be the result of

15

choices made by the taxpayer." *Id.* The principle case relied upon by the *Major* court, *Sealy Corporation v. Commissioner*, 171 F.3d 655 (9th Cir. 1999), reached the same conclusion.

Here, Nextera's obligation to pay fees to the DOE is not directly traceable (as the *Major* court required) to any specific act of nuclear waste disposal. *See* 10 C.F.R. 961.11; DE 58, Exhibits 1-6. The DOE does not submit an invoice to Nextera for the costs it incurs in connection with the disposal of Nextera's waste. *Id.* Instead, Nextera's payments to the DOE are directly traced to Nextera's own production of energy. *Id.* Hypothetically speaking,[6] if a random accident or some other unforeseen circumstance increased the costs of nuclear waste disposal, the costs of such would not be directly passed on to Nextera. *Id.* Stated another way, the uncertainty of day-to-day operations in nuclear waste disposal are not directly passed on to Nextera. Indeed, record evidence suggests that in any given tax year only a portion of the DOE's costs for nuclear waste disposal are passed on to plant owners through quarterly fees because the DOE's funds for nuclear waste disposal includes funds derived from interest on reserves, one-time fees, and nuclear waste disposal appropriations by Congress. DE 63-6 at 18. Thus, the instant case concerns two separate legal obligations. The first legal obligation is upon the DOE—it must permanently dispose of nuclear waste. *Id.* The second legal obligation is upon Nextera—it must pay fees to the DOE that are variable and based upon Nextera's production of energy. Case law supports this distinction in the context of Section 172.

For example, a case in which a taxpayer was found to have incurred deductible costs pursuant to an obligation imposed by federal law is *Host Marriott Corporation v. United States*,

---

6 The Court's use of hypotheticals and discussion on DOE fees is not intended to describe, with precision, how the DOE nuclear waste program is administered—the Court is not an expert on such matters—but is instead for the limited purpose of demonstrating that the DOE's obligations and Nextera's obligations, pursuant to federal law, are not the same.

16

267 F.3d 363 (4th Cir. 2001).  In *Marriott*, the appellate court permitted a Section 172 deduction for interest payments that had accrued on tax deficiencies because the amount of the interest was fixed by statute and was not under any sort of control or discretion by the taxpayer.  *See id.* at 365.  The clear and unequivocal statutory duty to pay a fixed amount of interest on an outstanding tax debt stands in stark contrast to the two separate obligations implicated in the instant case.

Turning back to an analysis of the instant case under *Major*, Nextera's fees to the DOE are based upon a "choice" of Nextera.  If Nextera chooses to produce more or less energy, its fees are tied to that choice.  Hypothetically, if technological advancement allowed for Nextera to produce more energy with the same amount of nuclear waste byproduct, Nextera's fees to the DOE would increase even though its nuclear waste disposal costs would stay the same.  Conversely, if Nextera's nuclear waste disposal needs were to increase, but Nextera's production of energy did not increase, Nextera's payments to the DOE would stay the same notwithstanding the rising cost of nuclear waste disposal.  These hypotheticals, like the hypotheticals above, demonstrate differences between Nextera's legal obligation to pay fees and the DOE's legal obligation to dispose of waste—a difference further complicated by Nextera's unilateral choice, to an extent, as to the manner and amount of its production of energy.  By contrast, the taxpayer in *Marriott* had no unilateral choice over the amount of its costs—interest accrued on its outstanding tax debt independent of any of the taxpayer's actions.

Although the Court does not doubt that at least a portion of the DOE's nuclear waste disposal costs will ultimately, invariably, bear some relationship to the level of Nextera's production of energy over time, this relationship does not mean that Nextera's obligation to pay fees based upon energy production and the DOE's obligation to dispose of waste are exactly the

17

same. Similarly, the Court does not doubt that unforeseen costs encountered by the DOE in nuclear waste disposal would ultimately, invariably, bear some relationship to the amount of fees the DOE collects from Nextera,[8] but this too does not mean that the DOE's obligation and Nextera's obligation are the same. The scope of the DOE's use of fees is broad, as conceded by Nextera. *See* DE 56-1 at 14-15. DOE fees are used by the DOE in connection with its anticipation of indefinite future storage costs of nuclear waste and, moreover, DOE fees are used and collected for the uncertain future storage cost of *all* nuclear waste in the United States—even waste that was produced by power plants no longer in operation (or will cease to operate in the future). Stated succinctly, the scope of the use of DOE fees is broad—broader than any power plant's individual nuclear waste disposal costs. Because of this broad scope and the manner in which DOE fees are determined (energy production), it is unsurprising to this Court that some federal regulations classify DOE fees as an operational cost and not a decommissioning cost. Fed. Reg. 24,018 (June 27, 1988) ("Decommissioning activities do not include the removal and disposal of spent fuel which is considered to be an operational activity.").

Ultimately, this Court need not determine how closely Nextera's DOE fees approximate Nextera's nuclear waste disposal costs. Rather, the Court need only decide whether Nextera has met its burden to establish that its legal obligation to pay DOE fees is equivalent to Nextera performing the act of nuclear waste disposal. Nextera has not met this burden. Nextera has not clearly shown that the DOE's obligation to dispose of waste and Nextera's obligation to pay fees is so equivalent that Nextera may claim as a deduction an *act* for which the responsibility is expressly placed by law upon a governmental entity. Nextera's argument that the DOE's disposal costs are

---

8 Over time, the pull and tug of collected fees compared to actual disposal costs would resemble, perhaps, a flattened sine wave function.

essentially passed on to Nextera could have easily been brought in *Major*. The taxpayer in *Major* could well have argued that the costs of compliance with the bankruptcy code were "the responsibility" or "would be borne" by the taxpayer under federal law (the bankruptcy court even determined the amount of those costs). Alternatively, the taxpayer in *Major* could have pointed out that its payment of professional fees, ultimately required by provisions in the bankruptcy code, provided a funding mechanism so that the bankruptcy code could function as intended. But the *Major* court required more—the costs had to be traced to a specific law and the costs could not result from a choice made by the taxpayer. *Major*, 334 F.3d at 1046. Neither requirement applies here. There is no direct relationship between the DOE's actions and Nextera's payments to the DOE and Nextera does have, to an extent, a unilateral choice over the amount of fees it pays to the DOE. The act giving rise to Nextera's liability to the DOE is not the DOE's disposal of nuclear waste, but instead Nextera's prior production of energy. *See Seely Corp. v. Comm'r*, 171 F.3d 655, 657-58 (9th Cir. 1999).

In conclusion, assuming *arguendo* that the DOE's nuclear waste disposal equates to decommissioning under Section 172(f), Nextera has not met its burden to clearly establish it is entitled to a deduction under Section 172(f) because its payment of fees to the DOE allows for it to claim, in the DOE's stead, the act of nuclear waste disposal. Federal law requires the DOE to dispose of nuclear waste and Nextera to pay fees to the DOE, but Nextera is not seeking a deduction under Section 172(f) because it is required to pay fees—it is seeking a deduction because it equates its obligation to pay fees with the DOE's legal obligation to dispose of waste. The Court concludes for all of the foregoing reasons that (i) the DOE's legal obligation is not the same as Nextera's legal obligation; (ii) Nextera's fees to the DOE are not directly traced to the

19

DOE's actual nuclear waste disposal costs; and instead (iii) Nextera's fees are tied to a unilateral choice of Nextera—the choice to produce energy in certain amounts. Defendant is, therefore, entitled to summary judgment as to each of Nextera's claims on this basis.

### C. Other Arguments Raised by the Parties

Nextera and Defendant dispute (i) when Nextera's right to a carryback deduction would have accrued and (ii) how far back in time Nextera's carryback deduction could go. Given that the Court has already ruled that Nextera is not entitled to a deduction under Section 172(f), the Court declines to address when a deduction would have accrued, to what extent that deduction could have been utilized, and all other remaining arguments raised by the parties.

### IV. CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment [DE 57] is **GRANTED** on the grounds specified in this Order and summary judgment is entered in Defendant's favor as to each of Nextera's claims.

2. Nextera's Motion for Partial Summary Judgment [DE 56] is **DENIED**.

3. All other pending motions are **DENIED AS MOOT**.

4. The Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 22nd day of March, 2017.

                                                                    ROBIN L. ROSENBERG

Copies furnished to Counsel of Record        UNITED STATES DISTRICT JUDGE